# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

11 – 8228-AEV

| United States of America | | CASE NUMBER: |
|---|---|---|
| | Plaintiff(s) | **CR** CR11-0542    7 |
| v. | | |
| **ALBERT GREENHOUSE** | | **WARRANT FOR ARREST** |
| | Defendant(s) | |

TO:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest   **ALBERT GREENHOUSE**

and bring him/her forthwith to the nearest Magistrate Judge to answer a(n): ☐Complaint ■Indictment
☐Information    ☐Order of Court    ☐Probation Violation Petition    ☐Violation Notice

charging him/her with: (ENTER DESCRIPTION OF OFFENSE BELOW)

**Conspiracy;**
**Mail Fraud;**
**Offer and Sale of Unregistered Securities;**
**Aiding and Abetting and Causing An Act To Be Done**

FILED by _____ D.C.

JUN 17 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

in violation of Title **18:** United States Code, Section(s) **371:1341:2:**
Title **15:** United States Code, Section(s) **77e and 77x:**

| Terry Nafisi | |
|---|---|
| NAME OF ISSUING OFFICER | June 15, 2011    LOS ANGELES, CALIFORNIA |
| Clerk of Court | DATE AND LOCATION OF ISSUANCE |
| TITLE OF ISSUING OFFICER | |
| NUNE GEVORKYAN | BY:   **JOHN E. McDERMOTT** |
| SIGNATURE OF DEPUTY CLERK | NAME OF JUDICIAL OFFICER |

*SEAL*

## RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION):

_____

| | |
|---|---|
| DATE RECEIVED | NAME OF ARRESTING OFFICER |
| DATE OF ARREST | TITLE |
| DESCRIPTIVE INFORMATION FOR DEFENDANT | |
| CONTAINED ON PAGE TWO | SIGNATURE OF ARRESTING OFFICER |

**WARRANT FOR ARREST**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| United States of America | | |
|---|---|---|
| | **Plaintiff(s)** | CASE NUMBER: |
| v. | | **CR** 7 |
| **ALBERT GREENHOUSE** | | **WARRANT FOR ARREST** |
| | **Defendant(s)** | |

## ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: | |
|---|---|---|---|---|---|---|---|
| DATE OF BIRTH: **1952** | | | | | | | |
| | | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: | | | | | |
| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | | AUTO COLOR: | | AUTO LICENSE NO. | ISSUING STATE |

| LAST KNOWN RESIDENCE: | LAST KNOWN EMPLOYMENT: |
|---|---|
| | |

FBI NUMBER:

ADDITIONAL INFORMATION:

| INVESTIGATIVE AGENCY NAME:<br>**FBI - Federal Bureau of Investigation**<br>**IRS - Internal Revenue Service** | INVESTIGATIVE AGENCY ADDRESS: |
|---|---|

NOTES:

AGENT

FILED

2011 JUN 15  PM 3: 08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11 ~~CR 11-0542~~ |
| Plaintiff, | <u>I N D I C T M E N T</u> |
| v. | [18 U.S.C. § 371: Conspiracy; |
| DANIEL TOLL, | 18 U.S.C. § 1341: Mail Fraud; |
| JOEL LEE CRAFT, JR., | 18 U.S.C. § 1343: Wire Fraud; |
| JAMES LLOYD, | 15 U.S.C. §§ 77e and 77x: Offer |
| PAUL BAKER, | and Sale of Unregistered |
| BART DOUGLAS SLANAKER, | Securities; 18 U.S.C. |
| ALLEN BRUCE AGLER, | § 1957(a): Monetary |
| aka "Paul Kingman," | Transactions in Property |
| ALBERT GREENHOUSE, | Derived from Illegal Activity; |
| DELITHA FLOYD, | 26 U.S.C. § 7201: Tax Evasion; |
| BRIAN EMMANUEL ELLIS, | 18 U.S.C. § 2: Aiding and |
| DANIEL MORABITO, | Abetting and Causing An Act To |
| DAVID NELSON, and | Be Done] |
| DARYL VAN SNOWDEN, | |
| Defendants. | |

The Grand Jury charges:

SAC;EML:sac

COUNT ONE

[18 U.S.C. § 371]

A.    INTRODUCTORY ALLEGATIONS

1.    At all times relevant to this Indictment, unless otherwise specified:

a.    Cinamour Entertainment LLC ("Cinamour") was located in Santa Monica, Sherman Oaks, and Encino, California, and was in the business of distributing independent films and television programs.  In or about 2001, Cinamour began financing and producing its own movies for distribution with the film project titled "Forbidden Samurai," later renamed "Forbidden Warrior."  Cinamour raised funds to produce "Forbidden Warrior" and other independent films, including "From Mexico with Love" and "Red Water 2012" ("Red Water") (collectively the "Films"), from investors nationwide through telemarketing boiler rooms.

b.    Defendant DANIEL TOLL ("defendant TOLL") resided in Encino, California.  Defendant TOLL was the President of Cinamour and, along with co-conspirator G.K.H., headed Cinamour.

c.    Defendant JOEL LEE CRAFT JR. ("defendant CRAFT") resided in San Clemente, California.  Defendant CRAFT was the founder and Chief Executive Officer of American Information Strategies, Inc., a California corporation located in San Clemente, California.

d.    Defendant JAMES LLOYD ("defendant LLOYD") resided in Lake Arrowhead, California.  Defendant LLOYD was a telemarketing "closer" (that is, an experienced member of the telemarketing staff who would finalize sales) first retained by

2

1  Cinamour in or about 2003 to raise funds for the film "Forbidden
2  Warrior."  Defendant LLOYD operated his own telemarketing room
3  (also known as a "boiler room," "independent sales office," or
4  "ISO") and employed and paid other telemarketers, both closers
5  and "fronters" (that is, less experienced members of the
6  telemarketing staff who would cold-call potential investors and
7  pass the names of those who were interested to closers who would
8  conclude the sale), to help raise funds for Cinamour film
9  projects through in or about 2007.

10       e.   Defendant PAUL BAKER ("defendant BAKER") resided
11  in Desert Hot Springs, California, and Rancho Mirage, California.
12  Defendant BAKER was a telemarketing closer first retained by
13  Cinamour in or about 2002 to raise funds for Cinamour-produced
14  films.  Defendant BAKER operated his own ISO and employed and
15  paid fronters and other closers to help raise funds for Cinamour
16  film projects.

17       f.   Defendant BART DOUGLAS SLANAKER ("defendant
18  SLANAKER") resided in Panorama City, California.  Defendant
19  SLANAKER was a telemarketing closer first retained by defendant
20  LLOYD in or about April 2004 to raise funds for the film "From
21  Mexico With Love."  Defendant SLANAKER left the employ of
22  defendant LLOYD in or about December 2005.  In or about August
23  2007, defendant SLANAKER was hired by co-conspirator G.K.H. and
24  defendant TOLL to manage "investor relations" for Cinamour.  Soon
25  thereafter, defendant SLANAKER managed a telemarketing boiler
26  room within Cinamour's office space that raised funds for the
27  film "Red Water."
28

3

1        g.   Defendant ALLEN BRUCE AGLER, also known as "Paul

2  Kingman" ("defendant AGLER"), resided in Sherman Oaks,

3  California.  Defendant AGLER was a telemarketing closer first

4  retained by defendant LLOYD in or about 2005 to raise funds for

5  the film "From Mexico With Love."

6        h.   Defendant ALBERT GREENHOUSE ("defendant

7  GREENHOUSE") resided in Delray Beach, Florida.  Defendant

8  GREENHOUSE was a telemarketing closer first retained by Cinamour

9  in or about April 2005 to raise funds for the film "From Mexico

10  With Love."

11        i.   Defendant DELITHA JONES-FLOYD ("defendant FLOYD")

12  resided in Compton, Hawthorne, and Lancaster, California.

13  Defendant FLOYD was a telemarketing closer first retained by

14  defendant LLOYD in or about 2005 to raise funds for the film

15  "From Mexico With Love."

16        j.   Defendant BRIAN EMMANUEL ELLIS ("defendant ELLIS")

17  resided in Los Angeles, California.  Defendant ELLIS was a

18  telemarketing closer first retained by defendant LLOYD in or

19  about 2005 to raise funds for the film "From Mexico With Love."

20        k.   Defendant DANIEL MORABITO ("defendant MORABITO")

21  resided in Hermosa Beach, California.  Defendant MORABITO was a

22  telemarketing closer first retained by defendant LLOYD in or

23  about 2005 to raise funds for the film "From Mexico With Love."

24        l.   Defendant DAVID NELSON ("defendant NELSON")

25  resided in Burbank, California.  Defendant NELSON was a

26  telemarketing closer first retained by defendant SLANAKER in or

27  about late 2007 to raise funds for the film "Red Water."

28

4

1          m.    Defendant DARYL VAN SNOWDEN ("defendant VAN

2    SNOWDEN") resided in Chatsworth, California.  Defendant VAN

3    SNOWDEN was a telemarketing closer first retained by defendant

4    SLANAKER in or about 2009 to raise funds for the film "Red

5    Water."

6         2.    Defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER,

7    GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN

8    (collectively "the defendants"), together with others known and

9    unknown to the Grand Jury, used the following companies, among

10   others, in furtherance of the conspiracy:

11         a.    From Mexico LLC, was formed to develop, finance,

12   produce, and license the film "From Mexico With Love."

13         b.    FMWL LLC, also known as From Mexico With Love LLC

14   ("FMWL"), was the manager of From Mexico LLC and responsible for

15   production of the film "From Mexico With Love."

16         c.    Red Water Films LLC ("Red Water Films") was formed

17   to fund the production and promotion of the film "Red Water."

18         d.    Under Red Water LLC, Under Water Productions LLC,

19   and Under Water LLC (collectively "Under Water") were formed to

20   produce the film "Red Water."

21         e.    Independent Essentials, Inc. ("Independent

22   Essentials") was the manager of Red Water Films.

23         f.    Desert Films LLC ("Desert Films") was an

24   "executive producer" of Red Water.

25

26

27

28

5

1          g.    American Information Strategies, Inc. ("AIS") was

2   a corporation located in San Clemente, California.  Defendant

3   CRAFT founded and owned AIS.  AIS was in the business of selling

4   investor lead lists to companies and telemarketing operations

5   interested in soliciting investors through telephone cold calls.

6   Defendant CRAFT, through AIS, also provided boiler room or ISO

7   services to individuals and companies interested in raising funds

8   from investors through telemarketing.  The ISO services provided

9   by defendant CRAFT, through AIS, included identifying

10  telemarketers and assisting with the preparation of sales

11  materials, telephone scripts, and private placement memoranda.

12  B.    OBJECTS OF THE CONSPIRACY

13       3.    Beginning no later than in or about 2004, and

14  continuing until at least in or about May 2009, in Los Angeles

15  County, within the Central District of California, and elsewhere,

16  defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER,

17  GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN,

18  together with others known and unknown to the Grand Jury,

19  knowingly combined, conspired, and agreed to commit the following

20  offenses against the United States:

21          a.    Mail fraud, in violation of Title 18, United

22  States Code, Section 1341;

23          b.    Wire fraud, in violation of Title 18, United

24  States Code, Section 1343; and

25          c.    Offer and sale of unregistered securities in

26  violation of Title 15, United States Code, Sections 77e and 77x.

27

28

                              6

C.   <u>MANNER AND MEANS OF THE CONSPIRACY</u>

4.   The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

a.   Cinamour, through defendant TOLL and co-conspirator G.K.H., retained the services of telemarketing closers to operate telemarketing boiler rooms to raise funds for the Films.  Consulting agreements between Cinamour, From Mexico LLC, Red Water Films, and their affiliates, on the one hand, and the closers, on the other hand, typically required the payment of 20 to 35 percent of all investor money to closers responsible for raising the funds.  The closer who ran the boiler room typically used the money to pay commissions to all telemarketers involved in inducing the investors to send money.  In addition to the 20 to 35 percent paid to the telemarketers, investor money was also typically used to pay for lead lists purchased from AIS and elsewhere, telephone bills and mailing expenses incurred by the boiler rooms, and printing costs for sales and promotional materials, among other things.

b.   Closers, including defendants LLOYD, BAKER, SLANAKER, AGLER, GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN, used fronters to cold-call individuals from lead lists purchased from AIS and other vendors.  The defendants provided the fronters with scripts touting the Films and the profitability of investing in motion pictures to use in soliciting potential investors.  Fronters who identified interested investors caused promotional materials prepared by the defendants and their co-conspirators, such as a private placement memorandum ("PPM"), subscription agreement, and sales literature,

1  to be delivered to interested investors via the United States

2  mails or interstate commercial carriers.  These sales and

3  promotional documents contained material misrepresentations,

4  half-truths, and concealed material facts.  The fronters then

5  turned the solicitation of individuals who expressed interest in

6  the investment over to a closer.

7      c.    The closers held themselves out as as "assistant

8  producers," "associate producers," or "executive producers" of

9  Cinamour, its affiliates, and/or the Films.

10      d.    Fronters and closers made material

11  misrepresentations, told material half-truths, and concealed

12  material facts when speaking to investors.  As further described

13  below, these misrepresentations, half-truths, and concealed facts

14  related to, among other things, the percentage or amount of

15  investor money that would be spent on the production and

16  promotion of the Films (as opposed to the cost of raising money

17  from investors), the anticipated amount and timing of returns to

18  the investors, whether the investors would be the first in line

19  to receive these returns, the safety of the investment, the

20  existence of completed or almost-completed distribution and/or

21  product placement agreements, and the success of Cinamour's

22  previous film ventures.

23      e.    Closers often invited investors to participate in

24  telephone conference calls for the purported purpose of providing

25  updates and information about the Films.  After providing

26  conference call participants with updates about the progress of

27  the Films, which updates usually included false and misleading

28  statements, the closers often attempted to "reload" the

8

1  investors, that is, to solicit new investment money from prior
2  investors.   In order to generate enthusiasm in the conference
3  call participants, the closers often paid other telemarketers to
4  call into the conference calls, use false names, and pose as
5  investors ("the paid plants").  After the updated information was
6  provided, the paid plants would enthusiastically commit to
7  investing additional money into the Films in order to induce
8  other participants in the calls to invest additional money in the
9  Films.

10          f.   The closers urged many investors who had savings
11 in retirement accounts to liquidate those accounts and open self-
12 directed individual retirement accounts ("IRA") that would permit
13 investment in the Films.  The defendants and their co-
14 conspirators often represented to investors that investments in
15 the Films through the investors' IRA were safe and secure because
16 the investments could be held at self-directed IRA custodians
17 with names like "Sterling Trust."

18          g.   Investors who sent money to invest in the Films
19 received certificates documenting their ownership interest in the
20 Films.  These certificates were sent through the United States
21 mails and interstate commercial carriers.

22      5.   The investments in From Mexico LLC and Red Water Films
23 sold by the defendants to investors consisted of partnership
24 interests referred to as "Units" that were not registered with
25 the United States Securities and Exchange Commission (the "SEC")
26 in that no registration statement or prospectus for the Units was
27 ever filed with the SEC or declared "effective" by the SEC, and
28 no exemption to the registration requirements applied.  As a

result, as the defendants then knew, the offer and sale of the
Units to investors nationwide violated the federal securities
laws.

6.    During the course of the conspiracy, the solicitation
of investments in the Films was the subject of various federal
and state administrative actions relating to the offer and sale
of unregistered securities in the Films, and the defendants' use
of interstate telemarketing, the existence of which actions the
defendants and/or their co-conspirators knew about and concealed,
or caused to be concealed, from investors:

a.    On or about July 20, 2007, the Texas State
Securities Board issued an Agreed Cease and Desist Order against
From Mexico LLC (the "Texas Order"). The Texas Order alleged
that the offer and sale of Units in From Mexico LLC violated
Texas law relating to the offer and sale of unregistered
securities. The Texas Order further alleged that From Mexico LLC
was not a registered broker-dealer authorized to sell securities
in Texas. The Texas Order prohibited any future offer and sale
of Units of From Mexico LLC in violation of Texas law relating to
securities and broker-dealer registration.

b.    On or about September 4, 2008, the Federal
Communications Commission issued a citation to Cinamour for
violation of the Communications Act of 1934, as amended,
47 U.S.C. § 503(b)(5), and the rules that govern telephone
solicitation and unsolicited advertisements, specifically,
telemarketing cold calls to telephone lines on the National Do-
Not-Call Registry ("the FCC citation"). The FCC citation related
to the solicitation of an individual whose telephone number was

10

1  on the National Do-Not-Call Registry to invest in Units of Red
2  Water Films.

3             c.   On or about March 24, 2009, the Commissioner of
4  the California Department of Corporations issued a Desist and
5  Refrain Order to Cinamour, Red Water Films, defendant BAKER,
6  defendant SLANAKER, and others, for violations of California
7  securities laws, including laws against the offer and sale of
8  unregistered securities and failure to obtain permission of
9  California regulators to sell Units in Red Water Films.  On or
10 about May 6, 2009, Cinamour agreed to cease and desist from
11 violations of California law relating to the offer and sale of
12 unregistered securities and from making untrue statements of
13 material fact or concealing material facts in the offer and sale
14 of securities.

15    7.   In or about mid-2007, the defendants and their co-
16 conspirators stopped soliciting new investors for "From Mexico
17 With Love" as production of "From Mexico With Love" was
18 substantially completed.  At that time, the defendants and their
19 co-conspirators began soliciting new investors to invest in Units
20 of "Red Water," as well as "re-loading" prior "From Mexico With
21 Love" investors to invest in "Red Water."

22    8.   In the time period of 2007 through in or about May
23 2009, investor funds invested in Red Water Films were used to pay
24 expenses of Cinamour, compensation to Cinamour's executives,
25 defendant TOLL, and co-conspirator G.K.H, and for the production
26 and promotion of "From Mexico With Love."

27    9.   Beginning in or about February 2009, Cinamour, FMWL,
28 and From Mexico LLC entered into agreements to borrow up to

1   $5 million from National Bank of California to pay the costs of
2   the domestic theatrical release of "From Mexico With Love," such
3   as the costs of film prints and an advertising campaign.
4   Ultimately, $3 million were drawn on the National Bank of
5   California credit line, further diluting any value in the Units
6   of From Mexico LLC sold to victim investors, because the credit
7   facility required the repayment of the $3 million loan from all
8   gross receipts generated by the film before any returns could be
9   paid to victim investors.

10  D.   MATERIAL MISREPRESENTATIONS

11        10.   The objects of the conspiracy were further carried
12  out by the defendants and their co-conspirators through the
13  following materially false and fraudulent pretenses,
14  representations, and promises, among others:

15        a.   That approximately $5 million would be raised to
16  produce "From Mexico With Love."

17        b.   That over 93 percent of investor money in From
18  Mexico LLC would be used to produce and promote "From Mexico with
19  Love."

20        c.   That approximately seven percent of investor money
21  in From Mexico LLC would be used to pay the expenses of the
22  offering of the Units to potential investors and management fees.

23        d.   That 93 percent of investor money in Red Water
24  Films would be used to produce and commercialize the film.

25        e.   That Units in Red Water Films would be sold by
26  employees and no commissions or performance-based remuneration
27  would be paid for the sale of the Units to investors.

28

                                 12

1        f.   That investors in the Films would receive returns

2 on their investments totaling 300 to 1,000 percent or more.

3        g.   That foreign distribution and/or product placement

4 agreements in hand or under negotiation would contribute

5 significant revenue and minimize risk to investors.

6        h.   That there was an urgency for the investor to send

7 money because Units in the Films would soon be sold out, or the

8 investment was oversubscribed or would soon be closed, and the

9 investor would lose out on the opportunity to invest.

10        i.   That investors would begin to receive returns on

11 their investments soon after investing, often within six months.

12        j.   That Cinamour's prior self-produced film project,

13 "Forbidden Warrior," was successful.

14        k.   That investors were "first in line" to receive

15 returns from revenues generated by the Films from theatrical and

16 video release, cable television, and international distribution.

17        l.   That development of video games based on the

18 Films, production and sales of movie soundtracks for the Films,

19 and other spin-off projects from the Films would provide

20 additional revenues and profits to investors.

21 E.   CONCEALMENT OF MATERIAL FACTS

22     11.   In addition, the defendants and their co-conspirators

23 knowingly concealed and willfully caused others to conceal the

24 following material facts, among others, from investors and

25 potential investors:

26        a.   That a substantial portion of investor money,

27 often up to 35 percent, was used to pay undisclosed commissions

28 to telemarketers who sold Units in the Films to investors.

b.   That by in or about mid-2005, the defendants had already raised approximately $5 million through the sales of Units in From Mexico LLC, and that over $15 million was ultimately raised from investors by mid-2007.

c.   That only approximately 35 percent of investor money in From Mexico LLC was used for the actual production of "From Mexico With Love."

d.   That substantially all of the investor money in Red Water Films was used for purposes other than the production and marketing of "Red Water."

e.   That Cinamour's prior self-produced film, "Forbidden Warrior," was released directly to video, was not profitable, and investors lost most of the money they invested in the film.

12.   Through the above-described conspiracy, the defendants and their co-conspirators induced over 450 victims nationwide to invest over $15 million in "From Mexico with Love."  These victim investors lost all of the money they invested in the film.

13.   Through the above-described conspiracy, the defendants and their co-conspirators induced approximately 100 victims nationwide to invest over $2.7 million in Red Water.  These victim investors lost all of the money they invested in the film.

F.   OVERT ACTS

14.   In furtherance of the conspiracy, and to accomplish its objects, defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER, GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the

14

following overt acts, among others, in the Central District of
California and elsewhere:

     Overt Act No. 1: In or about early 2004, defendant
LLOYD entered into a consulting agreement with co-conspirator
G.K.H. of Cinamour under which defendant LLOYD would receive
23 percent of all funds that defendant LLOYD and those working
with him obtained from investors in "From Mexico With Love."

     Overt Act No. 2: On or about March 1, 2004, defendant
BAKER, doing business as Independent Essentials, entered into a
consulting agreement with Cinamour under which Independent
Essentials would receive 20 percent of all funds that Independent
Essentials and defendant BAKER obtained from investors in "From
Mexico With Love."

     Overt Act No. 3: In or about early 2005, defendant
FLOYD participated in an interstate telephone call with victim
investor J.M. in Maryland, during which defendant FLOYD solicited
J.M. to invest in "From Mexico With Love."

     Overt Act No. 4: In or about February 2005, defendant
ELLIS participated in an interstate telephone call with victim
investor R.H. in Satellite Beach, Florida, during which defendant
ELLIS provided R.H. with domestic and international sales
projections for "From Mexico With Love," which projections led
R.H. to believe he would receive a return of at least 20 to
30 percent on an investment in the film.

     Overt Act No. 5: On or about April 20, 2005, defendant
GREENHOUSE entered into an agreement with co-conspirator G.K.H.
and From Mexico LLC under which defendant GREENHOUSE would

1  receive 35 percent of all funds that defendant GREENHOUSE

2  obtained from investors in "From Mexico With Love."

3       Overt Act No. 6: On or about February 17, 2006,

4  defendants LLOYD, AGLER, and TOLL, and co-conspirator G.K.H.,

5  caused a certificate for two Units of From Mexico LLC to be

6  mailed to victim investor S.F. in Wichita, Kansas.

7       Overt Act No. 7: In or about early August 2006,

8  defendant FLOYD participated in an interstate telephone call with

9  victim investor J.W. in Douglasville, Georgia, during which

10  defendant FLOYD claimed that J.W. would earn a seven-to-one

11  return on an investment in "From Mexico With Love" and that all

12  investors in Cinamour's prior movies had profited from the

13  investments.

14       Overt Act No. 8: In or about August 2006, defendant

15  AGLER told victim investor P.J. that P.J. would receive film

16  "credits" for his role in assisting with the production of "From

17  Mexico With Love" if P.J. would invest another $100,000 in the

18  film to bring the total investment by P.J. to $500,000.

19       Overt Act No. 9: In or about September 2006, defendant

20  MORABITO participated in an interstate telephone call with victim

21  investor W.H. in Forest Grove, Oregon, during which defendant

22  MORABITO solicited W.H. to invest in "From Mexico With Love" and

23  told W.H. the movie would "conservatively" provide returns to

24  investors ranging from five-to-one to nine-to-one.

25       Overt Act No. 10: In or about October 2006, defendant

26  ELLIS participated in an interstate telephone call with victim

27  investor N.H. in Yakima, Washington, during which defendant ELLIS

28  solicited N.H. to invest in "From Mexico With Love" and told N.H.

16

1  that N.H. could receive returns of twenty-eight-to-one based on

2  projected foreign and domestic sales of the film.

3       Overt Act No. 11: On or about October 26, 2006,

4  defendant AGLER, using the false name "Paul Kingman," and

5  defendant LLOYD conducted an interstate telephone conference call

6  with victim investors in "From Mexico With Love," during which

7  defendants AGLER and LLOYD represented to investors that Cinamour

8  had reached agreements with companies to "sponsor" the film "From

9  Mexico With Love." Defendants AGLER and LLOYD then attempted to

10 "reload" the investors.

11      Overt Act No. 12: In or about November 2006, defendant

12 GREENHOUSE participated in an interstate telephone call with

13 victim investor R.R. in Staten Island, New York, during which

14 defendant GREENHOUSE told R.R. that filming of "From Mexico With

15 Love" was almost completed, that the film would open in

16 approximately 1,500 theaters nationwide, and that investors would

17 receive returns of seven-to-one.

18      Overt Act No. 13: On or about January 31, 2007,

19 defendant AGLER, using the false name "Paul Kingman," conducted

20 an interstate telephone conference call with investors in "From

21 Mexico With Love," during which defendant AGLER told investors

22 that corporations including Adidas, Corona, UnderArmour, FILA,

23 Wrangler Jeans, and Everlast were signing agreements to sponsor

24 the film "From Mexico With Love." Defendant AGLER then attempted

25 to "reload" the investors.

26      Overt Act No. 14: In or about February 2007, defendant

27 BAKER participated in an interstate telephone call with victim

28 investor W.W. in Massachusetts about investing in "From Mexico

1  With Love," during which defendant BAKER represented that
2  investors in the film would receive money from the sale of
3  products related to the film, in addition to revenues from box
4  office sales and DVD rentals and sales.

5         Overt Act No. 15: In or about early March 2007, an
6  unknown co-conspirator participated in an interstate telephone
7  call with victim investor T.A. in New York, and convinced T.A. to
8  send a $10,000 check to purchase two Units in From Mexico LLC.

9         Overt Act No. 16: On or about March 15, 2007, defendant
10  ELLIS sent an interstate facsimile to victim investor W.W. in
11  Cody, Wyoming, containing an IRA Transfer Request Form/Direct
12  Rollover Form from Sterling Trust Company for the purpose of
13  facilitating W.W.'s investment in From Mexico LLC.

14         Overt Act No. 17: On or about July 24, 2007, defendant
15  BAKER sent an interstate email to L.O. in Roswell, Georgia, in
16  which defendant BAKER wrote that "From Mexico With Love" was
17  projected to earn $100 million at the box office, and asked L.O.
18  to call defendant BAKER upon receipt of the email.

19         Overt Act No. 18: On or about October 10, 2007,
20  defendant BAKER, on behalf of Desert Films, entered into an
21  agreement with defendant SLANAKER, doing business as BDS
22  Productions, under which defendant SLANAKER would receive
23  15 percent of all funds that defendant SLANAKER and those working
24  with him obtained from investors in "Red Water," plus expenses
25  incurred.

26         Overt Act No. 19: In or about December 2007, defendants
27  SLANAKER and FLOYD sent a package via FedEx to victim investor
28  G.A. in Chula Vista, California, containing a private placement

memorandum, subscription agreement, and sales literature for
investments in Red Water Films.

Overt Act No. 20: In or about January 2008, defendant
NELSON participated in an interstate telephone call with victim
investor C.H. in Kansas to solicit an investment in "Red Water,"
after which defendant NELSON sent to C.H. an information package
via FedEx that included a private placement memorandum and
subscription agreement for investments in Red Water Films.

Overt Act No. 21: In or about March 2008, defendant
CRAFT entered into an agreement with Cinamour and its affiliates
to supply independent sales offices (i.e., telemarketing boiler
rooms), telemarketers, and investor lead lists, for soliciting
potential investors in "Red Water," in exchange for $12,000 per
month and a fee of five percent of any investor money secured as
a result of defendant CRAFT's efforts.

Overt Act No. 22: On or about May 12, 2008, defendant
BAKER, using the title "Executive Producer, Cinamour
Entertainment," sent an email to defendants CRAFT and TOLL and
co-conspirator G.K.H., placing an order for investor lead lists
from defendant CRAFT to solicit investors for Units of Red Water
Films.

Overt Act No. 23: On our about June 11, 2008, defendant
NELSON sent an interstate email to victim investor D.E. in
Farmington Hills, Michigan, to solicit an investment in Red Water
Films.  In the email, defendant NELSON represented that Cinamour
had a completion guarantee bond for the film "Red Water" and that
any investment in "Red Water" was safe due to pre-sale
distribution agreements "in place."

19

1     <u>Overt Act No. 24</u>: In or about March 2009, defendant

2 VAN SNOWDEN participated in an interstate telephone call with

3 victim investor L.F. in Bellevue, Washington, to solicit an

4 investment in "Red Water," after which defendant VAN SNOWDEN sent

5 an information package to L.F., via FedEx, that included a

6 private placement memorandum and subscription agreement for

7 investments in Red Water Films

8     <u>Overt Act No. 25</u>: On or about March 12, 2009, co-

9 conspirator D.H. corresponded with defendant TOLL about the

10 compensation agreement among Red Water Films, Desert Films, and

11 defendant SLANAKER, for defendant SLANAKER's services in

12 soliciting investors in Red Water Films.

13     <u>Overt Act No. 26</u>: On or about April 9, 2009, defendant

14 NELSON caused victim investor R.C. to send a $5,000 check payable

15 to Red Water via FedEx from Lyons, Georgia, to Red Water Films in

16 Rancho Mirage, California.

17

18

19

20

21

22

23

24

25

26

27

28

COUNTS TWO THROUGH SIXTEEN

[18 U.S.C. § 1341]

15.  The Grand Jury repeats, realleges, and incorporates paragraphs 1 and 2 and paragraphs 4 through 14 of this Indictment as though fully set forth herein in their entirety.

16.  Beginning no later than in or about 2004, and continuing to at least in or about May 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER, GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud investors in "From Mexico With Love" and "Red Water" as to material matters, and to obtain money from such investors by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

G.  THE MAILINGS

17.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER, GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon:

//

21

| COUNT | DEFENDANTS | DATE | MAIL MATTER | FROM/TO |
|-------|-----------|------|-------------|---------|
| TWO | MORABITO, AGLER, LLOYD, CRAFT, TOLL | 7/5/06 | $5,000 check for 1 Unit of From Mexico LLC | Victim K.S. in Haiku, Hawaii, to Cinamour in the Central District of California |
| THREE | LLOYD, AGLER, CRAFT, TOLL | 8/2/06 | $100,000 check for 20 Units of From Mexico LLC | Victim P.J. in Simi Valley, California, to Cinamour in the Central District of California |
| FOUR | MORABITO, LLOYD, CRAFT, TOLL | 9/13/06 | Sales literature for investment in From Mexico LLC | Cinamour in the Central District of California to victim W.H. in Forest Grove, Oregon |
| FIVE | GREENHOUSE, AGLER, CRAFT, TOLL | 11/22/06 | $5,550 check for 1 Unit of From Mexico LLC | Victim R.R. in Staten Island, New York, to Cinamour in the Central District of California |
| SIX | GREENHOUSE, CRAFT, TOLL | 2/5/07 | $30,000 check for 6 Units of From Mexico LLC | Victim V.S. in San Francisco, California, to Cinamour in the Central District of California |
| SEVEN | LLOYD, ELLIS, AGLER, CRAFT, TOLL | 2/16/07 | Certificate for 121 Units of From Mexico LLC | Cinamour in the Central District of California to victim N.H. in Yakima, Washington |
| EIGHT | GREENHOUSE, CRAFT, TOLL | 3/7/07 | $500,000 check for 100 Units of From Mexico LLC | Victim S.H. in Alaska to Cinamour in the Central District of California |
| NINE | ELLIS, CRAFT, TOLL | 3/19/07 | $5,000 check for 1 Unit of From Mexico LLC | Victim W.W. in Cody, Wyoming, to Cinamour in the Central District of California |

22

| COUNT | DEFENDANTS | DATE | MAIL MATTER | FROM/TO |
|---|---|---|---|---|
| TEN | BAKER, CRAFT, TOLL | 11/28/07 | Unit Membership Certificate for Red Water Films LLC | Red Water Films in Rancho Mirage, California, to victim G.T. in Lynnwood, Washington |
| ELEVEN | SLANAKER, FLOYD, CRAFT, TOLL | 12/2007 | Sales literature for investment in Red Water Films | Cinamour in the Central District of California to victim G.A. in Chula Vista, California |
| TWELVE | NELSON, SLANAKER, CRAFT, TOLL | 2/12/08 | Sales literature for investment in Red Water Films | Cinamour in the Central District of California to victim C.H. in Salina, Kansas |
| THIRTEEN | FLOYD, SLANAKER, CRAFT, TOLL | 3/17/08 | $15,000 check for 3 Units of Red Water Films | Victim N.B. in Redmond, Washington, to Red Water Films in Rancho Mirage, California |
| FOURTEEN | BAKER, CRAFT, TOLL | 2/27/09 | Sales literature for investment in Red Water Films | Cinamour in the Central District of California to victim S.O. in Westin, Florida |
| FIFTEEN | VAN SNOWDEN, SLANAKER, CRAFT, TOLL | 3/2009 | Sales literature for investment in Red Water Films | Cinamour in the Central District of California to victim L.F. in Bellevue, Washington |
| SIXTEEN | NELSON, SLANAKER, CRAFT, TOLL | 4/28/09 | $5,000 check for 1 Unit of Red Water Films | Victim R.C. in Lyons, Georgia, to Red Water Films in Rancho Mirage, California |

23

COUNTS SEVENTEEN THROUGH TWENTY-FIVE

[18 U.S.C. § 1343]

18.  The Grand Jury repeats, realleges, and incorporates paragraphs 1 and 2 and paragraphs 4 through 14 of this Indictment as though fully set forth herein in their entirety.

19.  Beginning no later than in or about 2004, and continuing to at least in or about May 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER, GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investors in "From Mexico With Love" and "Red Water" as to material matters, and to obtain money and property from such investors by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

H.  **THE WIRES**

20.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER, GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN, for the purpose of executing the above-described scheme to defraud, transmitted, caused the transmission of, and aided and abetted the transmission of, the following items by means of wire and radio communication in interstate and foreign commerce:

//

//

24

| COUNT | DEFENDANT | DATE | ITEM WIRED |
|-------|-----------|------|------------|
| SEVENTEEN | LLOYD, FLOYD, CRAFT, TOLL | 8/2006 | Telephone call from Los Angeles, California, to victim J.W. in Douglasville, Georgia |
| EIGHTEEN | LLOYD, ELLIS, CRAFT, TOLL | 12/2006 | Telephone call from Los Angeles, California, to victim N.H. in Yakima, Washington |
| NINETEEN | MORABITO, LLOYD, CRAFT, TOLL | 12/2006 | Telephone call from Los Angeles, California, to victim R.E. in Belton, Texas |
| TWENTY | AGLER, LLOYD, CRAFT, TOLL | 1/31/07 | Telephone conference call from the Central District of California including victim D.H. in Glenmore, Pennsylvania |
| TWENTY-ONE | BAKER, CRAFT, TOLL | 2/2007 | Telephone call from Desert Hot Springs, California, to victim W.W. in Cambridge, Massachusetts |
| TWENTY-TWO | BAKER, CRAFT, TOLL | 7/27/07 | Email from Desert Hot Springs, California, to L.O. in Roswell, Georgia |
| TWENTY-THREE | FLOYD, SLANAKER, CRAFT, TOLL | 2/2008 | Telephone call from Cinamour in the Central District of California to victim J.M. in Gaithersburg, Maryland |
| TWENTY-FOUR | FLOYD, SLANAKER, CRAFT, TOLL | 5/28/08 | Facsimile from Cinamour in the Central District of California to victim J.C. in Tavares, Florida |
| TWENTY-FIVE | NELSON, SLANAKER, CRAFT, TOLL | 6/11/08 | Email from Cinamour in the Central District of California to victim D.E. in Farmington Hills, Michigan |

25

COUNTS TWENTY-SIX THROUGH THIRTY-EIGHT

[15 U.S.C. §§ 77e and 77x; 18 U.S.C. § 2]

21.  The Grand Jury repeats, realleges, and incorporates paragraphs 1 and 2 and paragraphs 4 through 14 of this Indictment as though fully set forth herein in their entirety.

22.  On or about the following dates, in the Central District of California, and elsewhere, defendants TOLL, CRAFT, LLOYD, BAKER, SLANAKER, AGLER, GREENHOUSE, FLOYD, ELLIS, MORABITO, NELSON, and VAN SNOWDEN, directly and indirectly, aided and abetted by each other, together with others known and unknown to the Grand Jury, willfully used and caused to be used the means and instruments of transportation and communication in interstate commerce and the mails to sell the following securities of From Mexico LLC and Red Water Films LLC when no registration statements were filed with the SEC and in effect as to such securities:

| COUNT | DEFENDANTS | DATE | SALE OF UNREGISTERED SECURITIES |
|---|---|---|---|
| TWENTY-SIX | LLOYD, AGLER, CRAFT, TOLL | 8/2/06 | 20 Units of From Mexico LLC to victim P.J. |
| TWENTY-SEVEN | MORABITO, LLOYD, CRAFT, TOLL | 10/1/06 | 3 Units of From Mexico LLC to victim W.H. |
| TWENTY-EIGHT | GREENHOUSE, CRAFT, TOLL | 2/16/07 | 6 Units of From Mexico LLC to victim V.S. |
| TWENTY-NINE | LLOYD, ELLIS, AGLER, CRAFT, TOLL | 2/16/07 | 121 Units of From Mexico LLC to victim N.H. |
| THIRTY | BAKER, CRAFT, TOLL | 2/23/07 | 3 Units of From Mexico LLC to victim W.W. |
| THIRTY-ONE | GREENHOUSE, CRAFT, TOLL | 3/7/07 | 100 Units of From Mexico LLC to victim S.H. |

26

| COUNT | DEFENDANTS | DATE | SALE OF UNREGISTERED SECURITIES |
|---|---|---|---|
| THIRTY-TWO | ELLIS, CRAFT, TOLL | 3/21/07 | 1 Unit of From Mexico LLC to victim W.W. |
| THIRTY-THREE | BAKER, CRAFT, TOLL | 11/28/07 | 1 Unit of Red Water Films LLC to victim G.T. |
| THIRTY-FOUR | SLANAKER, FLOYD, CRAFT, TOLL | 12/27/07 | 10 Units of Red Water Films LLC to victim G.A. |
| THIRTY-FIVE | FLOYD, SLANAKER, CRAFT, TOLL | 3/19/08 | 3 Units of Red Water Films LLC to victim N.B. |
| THIRTY-SIX | NELSON, SLANAKER, CRAFT, TOLL | 9/5/08 | 3 Units of Red Water Films LLC to victim D.E. |
| THIRTY-SEVEN | VAN SNOWDEN, SLANAKER, CRAFT, TOLL | 4/7/09 | 10 Units of Red Water Films LLC to victim L.F. |
| THIRTY-EIGHT | NELSON, SLANAKER, CRAFT, TOLL | 5/11/09 | 1 Unit of Red Water Films LLC to victim R.C. |

27

COUNTS THIRTY-NINE THROUGH FORTY-THREE

[18 U.S.C. §§ 1957(a), 2]

23.  The Grand Jury repeats, realleges, and incorporates paragraphs 1 and 2 and paragraphs 4 through 14 of this Indictment as though fully set forth herein in their entirety.

24.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants TOLL, CRAFT, and LLOYD, aided and abetted by each other, and together with others known and unknown to the Grand Jury, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct the following monetary transactions affecting interstate commerce in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, respectively:

| COUNT | DATE | DEFENDANT | FINANCIAL TRANSACTION |
|---|---|---|---|
| THIRTY-NINE | 7/17/06 | CRAFT | Payment in the amount of $10,130.82 to the Travel Store |
| FORTY | 11/27/06 | CRAFT | Payment in the amount of $20,865.57 to American Express |
| FORTY-ONE | 1/12/07 | TOLL | Payment in the amount of $20,000 to American Express |

| COUNT | DATE | DEFENDANT | FINANCIAL TRANSACTION |
|-------|------|-----------|----------------------|
| FORTY-TWO | 2/21/07 | LLOYD | Wire transfer in the amount of $216,410.47 to HSBC Bank |
| FORTY-THREE | 11/12/08 | TOLL | Payment in the amount of $12,226 to Bank of America Card |

29

COUNT FORTY-FOUR

[26 U.S.C. § 7201]

25.   The Grand Jury repeats, realleges, and incorporates paragraphs 1 and 2 and paragraphs 4 through 14 of this Indictment as though fully set forth herein in their entirety.

26.   During the calendar year 2008, defendant BART DOUGLAS SLANAKER ("defendant SLANAKER") had and received taxable income in the sum of approximately $336,308.78.  Well knowing and believing the foregoing facts, on or about April 15, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant SLANAKER did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year by failing to make an income tax return on or before April 15, 2009, as required by law, to any proper officer of the Internal Revenue Service; by failing to pay to the Internal Revenue Service the income tax; and by concealing and attempting to conceal from all proper officers of the United States of America his true and correct income.

COUNT FORTY-FIVE

[26 U.S.C. § 7201]

27. The Grand Jury repeats, realleges, and incorporates paragraphs 1 and 2 and paragraphs 4 through 14 of this Indictment as though fully set forth herein in their entirety.

28. During the calendar year 2009, defendant BART DOUGLAS SLANAKER ("defendant SLANAKER") had and received taxable income in the sum of approximately $118,956.75. Well knowing and believing the foregoing facts, on or about April 15, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant SLANAKER did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year by failing to make an income tax return on or before April 15, 2010, as required by law, to any proper officer of the Internal Revenue Service; by failing to pay

//
//
//
//
//
//
//
//
//
//
//
//
//

31

1  to the Internal Revenue Service the income tax; and by concealing

2  and attempting to conceal from all proper officers of the United

3  States of America his true and correct income.

A TRUE BILL

/s/

Foreperson

8  ANDRÉ BIROTTE JR.
   United States Attorney

10  Dorothy C. Kum
    Dep. Chief, crim. div. Par.

11  ROBERT E. DUGDALE
    Assistant United States Attorney
12  Chief, Criminal Division

13  BEONG-SOO KIM
    Assistant United States Attorney
14  Chief, Major Frauds Section

15  STEPHEN A. CAZARES
    Assistant United States Attorney
16  Deputy Chief, Major Frauds Section

17  ELLYN MARCUS LINDSAY
    Assistant United States Attorney
18  Major Frauds Section

32